Fabricant, J.
INTRODUCTION
This class action challenges the. practice of the defendant Leasecomm Corporation (“Leasecomm”) in bringing suits for breach of its equipment leasing contracts in Massachusetts District Courts, pursuant to forum selection clauses in its lease agreements, under circumstances in which Massachusetts courts would not otherwise have jurisdiction over the lessees. The plaintiffs have also named Leasecomm’s parent corporation, Microfinancial, Inc., based on a theory of agency. Presently before the Court are motions to dismiss filed by both defendants on a list of procedural and substantive grounds. For the reasons that will be explained, Leasecomm’s motion will be allowed in part and denied in part, and Microfinancial’s motion will be allowed.
*268 BACKGROUND
The complaint[3] alleges as follows. Defendant Leasecomm is a Massachusetts Corporation and is a wholly owned subsidiary of defendant Microfinancial, Inc., also a Massachusetts Corporation. Leasecomm is in the business of “microticket” leasing; that is, it leases items of business equipment[4] with relatively low value, usually less than $5,000. Its typical customer, according to the complaint, is “a small businessperson or an individual attempting to start a small business.”
Leasecomm operates through independent vendors who market the equipment to the customers and retain sole responsibility for delivering the leased property, furnishing any information or warranties, and providing any service or support. Leasecomm provides the vendors with standard form applications and lease contracts. Typically, “the vendor inserts the lease terms into the Agreement, has the customer sign the Agreement and application, and forwards these documents along with the customer’s down payment to Leasecomm.” Leasecomm signs the agreement, returns a copy to the lessee, and begins collecting monthly payments.
Leasecomm’s standard form leasing agreement is headed, at the top of the front page in large capital letters, “Non Cancellable Equipment Lease Agreement.” There follow the terms of the lease, including identification of the lessee and the equipment, and the amount and number of payments. About two thirds of the way down the front page appears the following language, in bold face type, underlined:
The parties hereby agree that this agreement is made in, governed by, to be performed in, and shall be construed in accordance with the laws of the Commonwealth of Massachusetts. They further consent and submit to the jurisdiction of the Courts of the Commonwealth of Massachusetts and expressly agree to such forum for the bringing of any suit, action or other proceeding arising out of their obligations hereunder and expressly waive any objection to venue in any such Courts and waive any right to a trial by jury so that trial shall be by and only to the Court. It is further agreed and understood that the corporate headquarters of Leasecomm Corporation is located within the venue of the District Court Department of the trial Court, within Middlesex County.[5]
About one inch below this provision is a signature block for the lessee. Below that appears a personal guaranty with another signature block for an individual guarantor.
The complaint further alleges that Leasecomm has sued thousands of its customers in Massachusetts pursuant to the forum selection clause in its lease agreements, although “few customers reside or have a place of business in Massachusetts or any other New England state at the time of signing the lease agreement or at the time of being sued by Leasecomm in Massachusetts.” Such use of the forum selection clauses, according to the complaint, is not fair or reasonable, because “class members are individuals and small businesses for whom litigating in a distant forum is prohibitively costly, inconvenient, and time-consuming, particularly in view of the relatively small amounts at issue.” Further, the clauses “are not negotiable,” “Leasecomm’s bargaining power and financial resources far exceed those of class members,” and “class members have a number of meritorious defenses to the claims asserted against them by Leasecomm,” some of which require witnesses who are beyond the subpoena power of Massachusetts courts. Some class members also have third-party claims against vendors, which should be litigated together with Leasecomm’s claims, and cannot be raised in Massachusetts. In addition, “Leasecomm is well positioned to litigate in the home states of the lessees /guarantors, since it is already represented throughout the country by hundreds of attorneys who routinely domesticate Massachusetts judgments and pursue collections activities on behalf of Leasecomm.”
The complaint further alleges that Leasecomm’s conduct under the forum selection clause of its leases’ is unfair and deceptive, in that “it has the purpose and effect of preventing class members from defending lawsuits brought against them.” In support of this assertion, the complaint alleges that Leasecomm’s policy and practice is to enter into agreements only with lessees “at substantial distances from eastern Massachusetts,” to do so only “where the value of the property, and hence the cost of the lease, is relatively low, usually not more than $5,000,” and to accept “nearly all applicants, regardless of the lessee’s credit history and ability to pay.” These alleged facts, the complaint concludes, indicate that “Leasecomm’s primary motivation is its ability to collect on a defaulted lease, as opposed to the lessee’s ability to perform the lease.”
The named plaintiffs are five individuals and the corporations through which two of them operate businesses. The individual plaintiffs live, respectively, in Louisiana, California, Florida, Iowa, and Oregon. The two corporate plaintiffs are organized, respectively, under the laws of California and Oregon. Each of the individuals operates, or at the time in issue did operate or was attempting to start, a business employing three or fewer employees. Each plaintiff entered into a lease agreement with Leasecomm, with each individual executing the agreement both as business operator and as personal guarantor.[6] Each thereafter stopped making payments under the lease agreement, in some cases after purporting to terminate it and attempting to return the equipment, due to dissatisfaction with the equipment or for other reasons. Each then became a defendant in an action brought by Leasecomm in a Massachusetts District Court to collect the remaining amount due under the lease agreement.
*269 The named plaintiffs in this action fall into three categories, based on the status of the proceedings in the actions brought by Leasecomm against them. The first category consists of defendants in suits brought by Leasecomm that are presently pending. The members of this group are Larry A. Clark (“Clark”), Elizabeth Landfield (“Landfield”), Alegre Auto Sales, Inc. (“Alegre"), a California corporation through which Landfield and her husband operate their business, and Emma J. Gamble (“Gamble”).
Leasecomm sued Clark in the small claims division of the Waltham District Court on or about February 26, 1999.[7] The attorney who represents the plaintiffs in this action appeared for Clark, obtained transfer of the case from the small claims session to the regular civil docket, and then answered the complaint on August 25, 1999.[8] Among the affirmative defenses set forth in his answer are lack of personal jurisdiction, forum non conveniens, and that “(t]he agreement on which suit was brought is unconscionable, in whole or in part, and thus may not be enforced.” The case remains pending in the Waltham District Court. On or about July 19, 1999, Leasecomm sued Landfield and Alegre in the Dedham District Court. In or about May of 1999, Leasecomm sued Gamble in the Woburn District Court. Each of these cases also remains pending.
In this action these plaintiffs, on behalf of themselves and similarly situated class members, assert two counts, the first under the declaratory judgment act, G.L.c. 231A, §1, et seq. and the second under G.L.c. 93A, §11.[9] They seek a declaration invalidating the forum selection clause, an injunction requiring Leasecomm to stipulate to dismissal of the pending District Court actions and barring it from bringing further suits in Massachusetts District Courts under the forum selection clause, damages, attorneys fees and costs.
The second category, consisting of parties who have settled Leasecomm’s claims against them, has only one member, Plaintiff Wilma K. Hansen (“Hansen”). Leasecomm sued Hansen, along with co-lessee Darla Kummer,[10] in the Dedham District Court, on or about December 1, 1998. Soon thereafter, according to the allegations of the complaint, Hansen “received several telephone calls from Leasecomm collection agents” who told Hansen that “if she failed to pay the amount due Leasecomm would take her house and she might go to prison.” Hansen paid the full amount Leasecomm claimed under the lease agreement, and on December 23, 1998, Leasecomm filed with the District Court a notice of voluntary dismissal with prejudice.
Hansen, on behalf of herself and others who have settled claims brought by Leasecomm, also asserts counts under the declaratory judgment act and c. 93A. She seeks judgment “declaring that the settlements obtained by Leasecomm may be rescinded due to duress” and "awarding refunds to class members of amounts paid by them,” conditioned on class members’ assent to motions to vacate stipulations of dismissal in the cases against them, “such damages doubled or trebled,” along with attorneys fees and costs.
The third category encompasses persons against whom Leasecomm has recovered default judgments in its District Court actions. In this category are plaintiffs Steve Pataki, and Lavair, Inc., the Oregon corporation through which he operates his business. Leasecomm sued Pataki and Lavair, Inc., in the Newton District Court in or about March of 1998. On July 6, 1998, Leasecomm obtained a default judgment in that action against both Pataki and Lavair.
These plaintiffs, on behalf of themselves and others similarly situated, assert the same two counts as the others. They seek judgment “declaring that the default judgments and judgments on the pleadings obtained by Leasecomm against class members are void,” and “enjoining Leasecomm from opposing motions brought under Rule 60(b)(4) on behalf of class members to vacate” those judgments, and “awarding refunds to class members of all monies paid” as a result of those judgments, along with damages “doubled or trebled,” attorneys fees and costs.
As to the defendant Microfinancial, Inc., the complaint alleges that Leasecomm is its “wholly owned operating subsidiary,” that the two corporations share “certain officers, directors, employees, and professional advisors,” as well as corporate offices, that it controls “the operations and management of Leasecomm,” that Leasecomm was formed and has been operated “solely to carry out the purposes and objectives of its parent companies and their shareholders,” that Leasecomm “was engaged in a common enterprise” with it, and that “Leasecomm acted as the agent of Microfinancial.” Based on these allegations, all plaintiffs seek judgment “holding Microfinancial jointly and severally liable with Leasecomm” for all monetary amounts awarded.
Leasecomm moves to dismiss all counts of the complaint against it pursuant to M.R.Civ.P. 12(b)(6) and (9). With respect to the first category of plaintiffs, it urges dismissal due to the prior pending actions in the District Court. As to Hansen, Leasecomm contends that she has failed to state a claim on which relief may be granted, in that she has failed to allege facts that would warrant rescission of her settlement on the ground of duress; it points out also that Hansen has failed to join Kummer, whose interests may be adversely affected by rescission of the settlement, and who it contends is therefore a necessary party. As to Patacki and Lavair, Leasecomm contends that they fail to state a claim in that the only proper forum for their effort to invalidate the judgment against them is the District Court that issued it. Microfinancial joins in those arguments, and contends also that the complaint fails to state a claim against it, in that it fails to *270 allege facts sufficient to support liability on a theory either of piercing the corporate veil or of agency.
DISCUSSION
For purposes of a motion to dismiss pursuant to Mass.R.Civ.P. 12(b), the allegations of fact in the complaint must be treated as true and the plaintiff is entitled to all favorable inferences. General Motors Acceptance Corp. v. Abington Casualty Ins. Co., 413 Mass. 583, 584 (1992). Characterizations and conclusions of law, however, warrant no such consideration, and may be disregarded. See e.g. Boston & M.R.R. v. County Com’rs of Middlesex County, 239 Mass. 127, 131 (1921). A motion to dismiss should be granted only if “it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” General Motors Acceptance Corp. v. Abington Casualty Ins. Co., 413 Mass. at 584, quoting Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).
I. The Claims of Plaintiffs Clark,
Landfield, Alegre, and Gamble.
Rule 12(b)(9) of the Massachusetts Rules of Civil Procedure establishes, as a defense to be raised by motion, the “pendency of a prior action in a court of the Commonwealth.” The rule operates to codify “salutary and well established rules against claim splitting.” Keen v. Western New England College, 23 Mass.App.Ct. 84, 87 (1986). Dismissal on the ground of prior pending action is proper where the prior action involves the same parties, and all issues raised in the present action are or could be raised in the prior action, either as affirmative claims or as defenses. See Conant v. Kantrovitz, 29 Mass.App.Ct. 998, 999 (1990); Yentile v. Howland, 26 Mass.App.Ct. 214, 216 (1988). Dismissal is not, however, mandatory in every instance where the rule may properly apply; the Court has some discretion to deny a motion to dismiss, even where proper grounds for dismissal under Rule 12(b)(9) are established. See Hurwitz v. Bocian, 41 Mass.App.Ct. 365, 368-69 (1996).
In this case, each member of the first group of plaintiffs is a party to a pending action brought by Leasecomm in the District Court. Although Microfinancial is not a party to the District Court cases, the plaintiffs’ theory against Microfinancial is based, in essence, on an identity of interests, and of action, as between the two corporations; thus, as to each plaintiff in this case the parties here must be viewed as the same, for purposes of Rule 12(b)(9), as those in each District Court action.
The subject matter of each District Court case is Leasecomm’s claim of breach of the lease agreement. In response to that claim, each plaintiff here, as defendant in that case, either has or could have raised as defenses the unreasonableness of the forum selection clause, lack of personal jurisdiction, and forum non conveniens. Thus, each of the substantive issues of fact or law that the plaintiffs seek to resolve in this case either is before the District Court, or could have been, had the plaintiffs in this case chosen to raise it there.
The affirmative causes of action raised by the plaintiffs here — declaratory judgment and G.L.c. 93A— have not been presented in the District Court cases. The declaratory judgment claim could not be raised there, since the District Court would not have jurisdiction over that claim. See G.L.c. 231A, §1 (listing courts authorized to grant declaratory judgments); Brossi v. Fisher, 1999 Mass.App.Div. 99, p. 2 (declaratory judgment as example of causes of action over which District Court still lacks jurisdiction after enactment of St. 1996, c. 358). Such relief, however, is authorized by statute only “in any case in which an actual controversy has arisen and is specifically set forth in the pleadings.” G.L.c. 231A, §1. An actual controversy exists here only as long as the defenses raised, or that could be raised, to Leasecomm’s District Court actions remain unresolved. Once the District Court determines whether the forum selection clause is enforceable against these plaintiffs, any actual controversy that may have existed in that regard will be over, and the plaintiffs’ claim for declaratory judgment will be moot.
In this respect, this case is remarkably similar to Jacoby, et al. v. Babcock Artficial Kidney Center, Inc., 364 Mass. 561, 563-64 (1974), in which the Court affirmed dismissal of an action seeking a declaratory judgment that would have effectively determined the plaintiffs’ liability in another action that was already pending between the same parties, arising from the same contractual relationship. Noting that “it is apparent from the record in this case that the entire controversy between these parties is already being adjudicated in a separate suit,” the Court concluded that “[t]o provide declaratory relief in this situation would be to transgress the limits within which the remedy is proper” because “[a] court cannot declare rights as to matters involved in a prior pending action,” quoting Anderson, Actions for Declaratory Judgments (2d Ed.) §209 (1951). Analogizing to cases dismissing declaratory judgment claims for failure to exhaust administrative remedies, the Court explained that a rule against such claims serves to prevent disruption of pending court proceedings, as well as to protect parties and the courts from the burden of multiplicity of actions. It observed that “[t]he declaratory relief procedure was not intended to permit the same claim to be adjudicated in multiple suits.” Here, as in Jacoby, the plaintiffs in this case are defendants in prior pending cases presenting disputes that are “in effect identical,” id. at 563, with this one. These plaintiffs thus fail to state a proper claim for declaratory judgment.
As to the c. 93A claim, insofar as it seeks monetary relief, the District Court clearly does have jurisdiction. G.L.c. 93, §11, 4th para. Thus the absence of this *271 claim from the District Court actions appears to result solely from the choice of the defendants there, plaintiffs here, not to raise it byway of counterclaim in those cases. The claim for injunctive relief, however, presents a more difficult issue. In the same paragraph that authorizes damages claims in the District Court, section 11 of c. 93A provides that “(n]o rights to equitable relief shall be created under this paragraph.” Thus, at least before the 1996 enactment of the experimental one-trial system for the District Courts in Middlesex and Norfolk Counties, 1996 Stat. c. 358, §3, the relief available in the District Court for violations of c. 93A was clearly limited to damages, with injunctions available only in the Superior Court. Under the 1996 enactment, however, the District Courts in Middlesex and Norfolk Counties, which include all of the District Courts in which Leasecomm has sued these plaintiffs, “have the same equitable powers and jurisdiction as is provided for the Superior Court pursuant to chapter two hundred and fourteen of the General Laws for the purpose of the hearing and disposition of such cases.” Id. The category of cases referred to is “civil actions otherwise subject to transfer, retransfer, removal and appeal,” pursuant to G.L.c. 231, §§97-107; the fourth paragraph of section 11 of G.L.c. 93A explicitly places actions under that section within those provisions.
The Appellate Division of the District Court has opined that section 3 of c. 358 “grants the District Court equitable powers in cases ordinarily within District Court jurisdiction, but . . . does not expand District Court jurisdiction. The Superior Court retains exclusive jurisdiction of those statutory causes of action heretofore assigned to it.” Brossi v. Fisher, 1999 Mass.App.Div. 99, p. 2. Causes of action under c. 93A are not in that category since, as discussed supra, the statute assigns them to both the District Court and the Superior Court. The statute does not affirmatively prohibit equitable relief in the District Court; rather, it merely disclaims any creation “under this paragraph” of rights to equitable relief in that Court. Read in light of the context of the time of its enactment, when the District Courts did not otherwise have equitable power, this provision may fairly be understood as merely expressing legislative acknowledgment of the existing allocation of roles between the courts, and of the lack of any intention to change that arrangement by virtue of this statutory enactment. Under this reading, no conflict appears between this provision of c. 93A and the later enactment of St. 1996, c. 358, §3; the latter empowers District Courts in the affected counties to grant equitable relief in c. 93A cases, as in other cases normally within the District Court’s jurisdiction.
Since the District Court could hear the c. 93A claims and grant full relief, these claims are compulsory counterclaims in the District Court actions, so that these plaintiffs’ choice not to raise these claims in those actions effectively waives them. See Mass.R.Civ.P. 13(a) (making compulsory as counterclaim “(a]ny claim for relief the court has power to give which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the same transaction or occurrence that is the subject matter of the opposing party’s claim . . .”), made applicable to the District Court pursuant to Mass.R.Civ.P. 1A, as amended effective July 1, 1996. Compare Smith v. Caggiano, 12 Mass.App.Ct. 41, 46 (1981) (prior collection action in small claims session of District Court did not preclude class action in Superior Court under c. 93A because counterclaims not compulsory under small claims procedure, and because District Court would not have had jurisdiction over injunctive aspects of any counterclaim).
It thus appears that all viable claims asserted by the named plaintiffs in this action are, or would have been, available to them as counterclaims in the District Court actions. This case does, however, differ from the pending District Court actions in one potentially significant respect: the plaintiffs here seek to represent a class of persons similarly situated, whose numbers, according to the allegations of the complaint, may be in the thousands. The substantive issues the plaintiffs seek to raise, on behalf of themselves and class members, warrant consideration in a procedural context that will provide fair opportunity, as a practical matter, for their full presentation. See generally Schuback v. Household Finance Corp., 375 Mass. 133 (1978) (recognizing “distant forum abuse” as violation of c. 93A in context of consumer transactions). If the plaintiffs’ factual allegations are true, as the Court must assume for purposes of this motion, it may well be, as the plaintiffs contend, that the only economically viable way to litigate the issues they seek to raise is by employing the economies of scale available in a class action. It is appropriate therefore, that these plaintiffs have an opportunity, in some forum, to pursue their effort to invoke the class action procedure. [11]
The question then arises whether such an opportunity is available in the District Court. As noted supra, since 1996 the Rules of Civil Procedure have applied to the District Court, as well as to the Superior Court. The 1996 amendment makes no exception for Rule 23, and the 1996 Reporter’s Notes observe that “(w]ith the merger of the District Court civil rules into the Mass.R.Civ.P., Rule 23 of the Mass.R.Civ.P. governing class actions is made applicable to District Court proceedings.” It thus appears that class actions are generally available in the District Court.
Whether that procedure would be available to these plaintiffs, on counterclaims under c. 93A in the District Court actions against them, is less clear. The first paragraph of Section 11 of c. 93A expressly authorizes prosecution of claims under the statute through class actions in the Superior Court. However, the fourth paragraph of section 11, regarding claims under the *272 statute in the District Court, provides that “nor shall a person asserting such claim be able to assert any claim on behalf of other similarly injured and situated persons as provided m the preceding paragraph.”
This distinction between Superior Court and District Court actions under c. 93A is hardly surprising when considered in the context of the enactment of the statute in 1967. Massachusetts had not yet adopted rules of civil procedure, so that class actions were governed solely by case law. E.g. Thorn v. Foy, 328 Mass. 337, 338 (1952); Spear v. H.V. Greene Co., 246 Mass. 259, 266-67 (1923). The District Court lacked equitable powers, so that the kinds of disputes most likely to be suitable for class actions would not normally appear in the District Court. In this context, the provision in c. 93A for class actions in the Superior Court, but not in the District Court, may be understood not as circumscribing the scope of claims that might otherwise be made in the District Court, but as establishing broad remedial mechanisms for enforcement of the rights granted, while avoiding undue expansion of what was otherwise the normal role of the District Court. There is room for argument that the subsequent enactment of c. 358 of the Acts of 1996, together with the application of the Rules of Civil Procedure to the District Court, warrants a reinterpretation of this statutory provision.
As is apparent, however, it is at least unclear whether these plaintiffs could pursue their c. 93A counterclaims in the District Court as class representatives. That uncertainty, in light of the factual allegations referred to supra, weighs against dismissal of this action on the ground of prior pending action. Accordingly, the motions to dismiss will be allowed as to this group of plaintiffs with respect to count I, but denied as to count II.[12]
II. The Claims of Plaintiffs Hansen, Pataki and Lavair, Inc.
The claims of the remaining plaintiffs raise, in addition to the same issues already discussed, certain additional concerns that compel dismissal. Each of these plaintiffs has allowed judgment to enter in the District Court, in one case by dismissal with prejudice based on settlement, and in the other case by default. Beyond dispute, each of these plaintiffs seeks to reopen proceedings previously concluded in the District Court, but to do so by order of this Court. Allowance of this effort would undermine not only important principles of finality, but also the proper relationship between departments of the Trial Court.
Plaintiff Hansen, purporting to represent a class of persons who have settled suits brought by Leasecomm in the District Court, seeks to rescind her settlement, and obtain a refund of the amount she paid, on a theory of duress. A party seeking to void a contract on the basis of economic duress must show that “he has been the victim of a wrongful or unlawful threat or act, and . . . such act or threat must be one which deprives the victim of his unfettered will. As a direct result of these elements, the party threatened must be compelled to make a disproportionate exchange of values . . . Merely taking advantage of another’s financial difficulty is not duress. Rather the person alleging financial difficulty must allege that it was contributed to or caused by the one accused of coercion.” International Underwater Contractors, Inc. v. New England Telephone & Telegraph Co., 8 Mass.App.Ct. 340, 342 (1979).
The only facts alleged in the complaint on which Hansen bases her claim of duress are that Leasecomm filed suit against her in Massachusetts, and that its collection agents told her, in telephone conversations, that “if she failed to pay the amount due Leasecomm would take her house and she might go to prison.” These allegations are legally insufficient to support a claim for rescission based on duress. Hansen’s theories as to invalidity of the forum selection clause, lack of personal jurisdiction, and forum non conveniens, if they had been raised and successfully litigated in the District Court action, would have resulted in judgment in her favor. That she may have had meritorious defenses, however, does not make Leasecomm’s action in suing her wrongful or unlawful. “An indication that' a party intends to pursue lawful legal proceedings if the other party falls to accept a pending settlement offer will not, normally, constitute duress.” Delaney v. Chief of Police of Wareham, 27 Mass.App.Ct. 398, 407-08 (1989) (town’s threat to proceed with discharge hearing if police officer did not settle did not constitute duress). Nor is there indication in the allegations of the complaint that Hansen accepted a disproportionate exchange of values. What Hansen obtained by making full payment was freedom from the economic burden of defending, as well as from any additional collection costs that would have accrued in connection with further litigation, for which she would have been liable if her defense were unsuccessful. The complaint provides no factual basis for any evaluation of that gain, as compared with the amount paid. Nor, perhaps more importantly, does the complaint include any allegations to indicate that Leasecomm in any way caused or contributed to whatever financial pressures may have influenced her to make payment rather than undertake the expense of defending its suit.
Having failed to allege facts sufficient to support a claim for rescission based on duress, Hansen is bound by the settlement, which resulted in dismissal of Leasecomm’s claim against her with prejudice. That judgment precludes her from raising in this action any claim that she could have raised as a counterclaim in that case. See Mass.R.Civ.P. 13(a). Among these is her claim under c. 93A. As to Hansen’s declaratory judgment claim, dismissal is required under Rule 12(b)(6), because no actual controversy remains between Hansen and Leasecomm regarding the validity of the forum selection clause; Hansen has fully met her obligations under the lease, so that she is no longer at any risk of *273 its enforcement, and Leasecomm has dismissed its suit against her with prejudice. The motions to dismiss must therefore be allowed as to counts III and IV.[13]
The position of plaintiffs Pataki and Lavair, Inc. is similar, for present purposes, to that of Hansen. These defendants failed to respond to the District Court action against them, allowing judgment to enter by default. The relief they now seek would, in substance, vacate that Court’s judgment, remove the default, and reopen in this Court the same issues that were previously resolved through the default judgment.[14] Pursuant to Mass.R.Civ.P. 60(b)(4), a party seeking relief from a judgment may request such action by motion in the same case in which judgment was entered. The rule “does not limit the power of a court to entertain an independent action to relieve a party from a judgment.” See Colley v. Benson, Young, & Downs Ins. Agency, Inc., 42 Mass.App.Ct. 527, 528 (1997). Massachusetts courts have long held, however, that an independent action seeking relief from a judgment must be brought in the court that issued the judgment. See Air Purchases, Inc. v. Mechanical Coordinators Corp., 21 Mass.App.Ct. 632, 633 (1986) (“[a]uthority for the ‘same court’ proposition predates adoption of the Massachusetts Rules of Civil Procedure in 1974”). Thus, the only proper forum for Patacki and Lavair to seek relief from the default judgment is in the District Court that issued that judgment. After obtaining that relief, these parties would then be in a position to file an answer and counterclaim, asserting their affirmative defenses as well as their claims for affirmative relief under c. 93A. See e.g. Brady v. Nynex Information Resources Co., 1997 Mass. Super. LEXIS 438, note 7. As long as the default judgment remains in effect, however, it precludes this effort to raise in this separate action these claims and defenses that could have been raised in the District Court.
These plaintiffs, like the first group, emphasize that the District Court cannot hear their declaratory judgment claim. Here again, the assertion is correct, but does not save the plaintiffs’ complaint. The prior District Court judgment, as long as it remains in effect, bars the plaintiffs’ declaratory judgment claim, because it eliminates any actual controversy between these parties. The issue these plaintiffs seek to resolve by declaratory judgment — whether the forum selection clause may be enforced against them — has been fully resolved by that judgment, subject only to any action the District Court might take to relieve the plaintiffs of its effect. Accordingly, Plaintiffs Patacki and Lavair fail to state a claim on which relief may be granted, and the motions to dismiss must be allowed as to counts V and VI.
III. The Claim Against Microfinancial.
As noted supra, the plaintiffs’ claim against Microfinancial, Inc., derives entirely from the alleged conduct of Leasecomm; the plaintiffs allege no conduct of Microfinancial as any basis for liability. The only facts alleged in support of their theory of vicarious liability are that Leasecomm is Microfiancial’s “wholly owned operating subsidiary,” that the two corporations share “certain officers, directors, employees, and professional advisors,” as well as corporate offices, that Microfinancial controls “the operations and management of Leasecomm,” that Leasecomm was formed and has been operated “solely to carry out the purposes and objectives of its parent companies and their shareholders,” that Leasecomm “was engaged in a common enterprise” with it, and that “Leasecomm acted as the agent of Microfinancial.”
As the plaintiffs effectively acknowledge in their opposition to this motion, these facts fall well short of those required to state a claim on a theory of piercing the corporate veil. See Berger v. H P. Hood, Inc., 416 Mass. 652, 657 (1993) (corporate separateness may be disregarded “only where the corporation is a sham, or is used to perpetrate deception to defeat a public policy”); Gurry v. Cumberland Farms, Inc., 406 Mass. 615, 625 (1990) (“corporations are to be regarded as separate entities where there is no compelling reason of equity ‘to look beyond the corporate form for the purpose of defeating fraud or wrong’ ”); My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 619 (1968) (disregard of separate corporate entities warranted “in rare particular situations in order to prevent gross inequity,” based on “failure (a) to make clear which corporation is taking action in a particular situation . . . , or (b) to observe with care the formal barriers between the corporations with a proper segregation of the separate businesses”). The complaint in this case contains no allegation of any failure to observe corporate forms, any intermingling of funds or assets, or any conduct by either corporation that could have led these plaintiffs, or anyone else, to be confused or misled as to which corporation was involved in any transaction. Indeed, nothing in the complaint suggests that the plaintiffs had ever heard of Microfinancial before they initiated this litigation.
In their opposition to this motion, the plaintiffs emphasize a theory of agency, rather than of piercing the corporate veil. The concepts are indeed distinct, but the mere conclusory assertion of an agency relationship is not enough to state a claim. As the case law recognizes, the kinds of facts that would support liability of a parent corporation as principal for the acts of a subsidiary as agent overlap closely with those that would support piercing the corporate veil. See My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. at 618 (‘‘[a] corporation or other person controlling a corporation and directing, or participating actively in . . . its operations may become subject to . . . liability on principles of agency or of causation”). The complaint in this case contains no allegation of any conduct by Microfinancial amounting to participation in the business of Leasecomm or the interactions between Leasecomm and these plaintiffs, nor is there *274 any allegation of any contract or other arrangement by which Leasecomm dealt with the plaintiffs as agent for Microfinancial. Rather, the allegations, in substance, indicate no more than the relationship of corporate parent and subsidiary. Ultimate control is, of course, inherent in the nature of such a relationship, but the case law makes clear that such control does not render the parent liable for the conduct of the subsidiary. See Gurry v. Cumberland Farms, Inc., 406 Mass. at 624 (“mere fact of common management and shareholders” insufficient to establish agency relationship). Thus, count VII must be dismissed for failure to state a claim on which relief may be granted.
ORDER
For the foregoing reasons, it is hereby ORDERED that the Defendants Leasecomm Corporations’s Motion to Dismiss is ALLOWED with respect to counts I, III, IV, V, and VI of the complaint, and DENIED with respect to count II. Defendant Microfinancial, Inc.’s Motion to Dismiss is ALLOWED.

The complaint that is presently before the Court is the Fourth Amended Complaint.

Examples of the equipment involved are security systems, credit card processing terminals, computers, and software.

Some the lease agreements contain minor variations in wording that are not relevant to the issues presented in the present motion.

Plaintiff Clark denies having signed the lease agreement or having authorized anyone to sign for him, but appends to the complaint a copy of an agreement bearing signatures purporting to be his.

Details of the status of the District Court actions brought by Leasecomm against the plaintiffs appear not in the complaint, but in copies of pleadings and other materials filed in those actions, provided by the defendants as attachments to its motion. See Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993) (on motion to dismiss court may consider “documents the authenticity of which are not disputed by the parties," including “official public records”).

The materials submitted in connection with the present motion include copies of the motion to transfer, dated August 10, 1999, with a cover letter requesting hearing on the motion on August 18, 1999, and the answer, dated August 25, 1999, submitted with a cover letter addressed to the “Clerk for Civil Business,” but no document reflecting any ruling on the motion to transfer. The Court infers that the motion to transfer was allowed on August 18, 1999, prior to the filing of the answer.

Clark joins only in the declaratory judgment count, and not in the c. 93A claim.

Hansen’s lease agreement identifies the lessee as “Diamond Tree Associates," with a check in a box marked “partnership.” Signatures of both Hansen and Kummer appear in blocks for both lessees and guarantors. Under the signature of each in the blocks for lessees, in a space for “title,” appears the word “owner.”

These observations should not be understood as reflecting any conclusion on the propriety of class certification; that issue is not yet presented. This Court concludes only that the plaintiffs should have an opportunity to put that issue before some court for determination.

Transfer of the pending District Court cases to this Court pursuant to G.L.c. 223, §2B, and consolidation with this case, could avoid any duplication or inconsistency.

This conclusion eliminates any need to address Leasecomm’s arguments that Hansen has failed to plead duress with particularity as required by Mass.R.Civ.P. 9(b), and that she has failed to join Kummer as a necessary party pursuant to Mass.R.Civ.P. 12(b)(7) and 19.

These plaintiffs emphasize that their requested relief does not include any direct action by this Court with respect to the District Court’s judgment; their request, rather, is for an injunction directing the defendants to take or not take certain positions in contemplated future proceedings in the District Court. The distinction is one without a difference; regardless of its form, the relief requested would in substance undo the work previously done by the District Court. Cf. Peterson v. Hopson, 306 Mass. 597, 603 (1940) (“A judge should hesitate to undo his own work . . . But until final judgment or decree there is no lack of power, and occasionally the power may properly be exercised").